UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRENT BRUNNEMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01093-TWP-CSW |
| | ) | |
| BAUTECH USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS OR
ALTERNATIVE MOTION TO TRANSFER**

This matter is before the Court on Defendant Bautech USA, Inc.'s ("Bautech") Motion to Dismiss for Lack of Jurisdiction and Improper Venue and in the Alternative to Transfer Venue (Filing No. 12). Plaintiff Brent Brunnemer ("Brunnemer") initiated this action alleging breach of contract. For the reasons discussed below, the Court concludes that it lacks personal jurisdiction, and Bautech's alternative request to transfer is **granted**, although transfer is **stayed** until March 19, 2026.

## I. BACKGROUND

The following facts are not objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Brunnemer as the non-moving party. *See Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Bautech is a Delaware corporation with its business offices and manufacturing plant located in Okeechobee, Florida (Filing No. 12-1 at 1). Bautech manufactures precast concrete products and provides other construction industry solutions operating almost exclusively within

the state of Florida. *Id.* Bautech does not have any operations or locations within the state of Indiana and does not advertise or sell to persons in Indiana. *Id.*

In 2023, Bautech required working capital after it had completed a project to manufacture erosion control/artificial reef units at its Okeechobee, Florida, facility for use in a project in the Miami, Florida, area. *Id.* A mutual contact of Bautech and Brunnemer put them in contact with each other regarding potential financing. *Id.* Brunnemer resides in the City of Indianapolis, Indiana. Brunnemer's wife, Tammy, flew down to Florida to meet with representatives from Bautech to offer a loan and discuss the financing terms. *Id.* No representative from Bautech made any corresponding trip to Indiana relating to the negotiations of the loan. *Id.*

On October 25, 2023, Brunnemer and Bautech entered into an agreement in the form of a promissory note (the "Note") (Filing No. 1 at 2). The Note provided that Brunnemer was to advance a principal sum of $200,000.00 to Bautech to facilitate capital equipment purchases and other general corporate purposes for Bautech's business (Filing No. 1-1 at 1). In return, the Note provided that Bautech was to repay the principal sum to Brunnemer by March 1, 2024. *Id.* Bautech was also required to pay to Brunnemer an additional $100,000.00 to be paid in two $50,000.00 installments: the first on or before March 1, 2024, and the second on or before October 1, 2024. *Id.* The Note also provides that a UCC lien would be filed with the state of Florida as security for the Note, with Bautech's erosion control blocks as collateral. *Id.* The Note states that it "shall be governed by and construed under the laws of the state of Florida, as applied to agreements among Florida residents, made and to be performed entirely within the state of Florida, without giving effect to conflicts of laws principles." *Id.* at 2. All collateral was located in and remains in Florida (Filing No. 12-1 at 2).

After Bautech allegedly defaulted on the loan, Brunnemer filed this action. Brunnemer alleges that this Court has diversity jurisdiction over the state law claim for breach of contract under 28 U.S.C. §1332 because the amount in controversy exceeds the value of $75,000, and complete diversity between the parties exists (Filing No. 1 at 1). He also claims that "venue lies in the United Stated [*sic*] District Court, Southern District of Indiana pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district." *Id.* at 2.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss under Rule 12(b)(2)

Federal Rule of Civil Procedure Rule 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When deciding a Rule 12(b)(2) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff if they weigh on personal jurisdiction. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001). If the complaint, however, consists of conclusory allegations unsupported by factual allegations, the complaint fails the liberal standard of Rule 12(b). *Id.* The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

The extent of a plaintiff's burden is dependent upon the method by which the court determines the issue of personal jurisdiction. *Id.* "When the . . . court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id.* But where, as here, the court determines personal jurisdiction

based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

In determining whether the plaintiff has met the prima facie standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). If the defendant has submitted evidence in opposition to the implementation of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782–83. This evidence submitted by the defendant may include affidavits, unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

**B.      Motion to Dismiss for Improper Venue under Rule 12(b)(3)**

The procedure for resolving a Rule 12(b)(3) motion is the same procedure used to test personal jurisdiction, accepting any factual findings as true unless contradicted by the defendant's affidavits. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2nd Cir. 2005); *see also Nagel v. ADM Inv'r Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The plaintiff bears the burden of establishing that venue is proper. *Carroll v. CMH Homes, Inc.*, No. 12-cv-23, 2013 WL 960408, at *2 (S.D. Ind. Mar. 12, 2013). Further, the court resolves any factual conflicts in the plaintiff's favor. *Id.* Finally, the court is not obligated to limit its consideration to the pleadings when deciding a motion to dismiss under Rule 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

4

C.    **Transfer of Venue**

A transfer is the proper mechanism for addressing lack of proper venue under the common law doctrine of *forum nonconveniens*. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). A party may seek change of venue pursuant to 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

"[S]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness. . . . By the same token, [appellate courts] grant a substantial degree of deference to the district court in deciding whether transfer is appropriate." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–78 (7th Cir. 2010) (internal citations and punctuation omitted). The Seventh Circuit has further explained:

> The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.

*Id.* at 978 (citation modified).

Concerning the "convenience" factor, courts consider the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Id.* "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Id.*

Concerning the "interest of justice" factor, courts consider the efficient administration of the court system, including docket congestion and likely speed to trial in each forum, each court's familiarity with the relevant law, the desirability of resolving controversies in each location, and the relationship of each community to the controversy. *Id.* "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge. *See, e.g.*, *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir. 1980).

### III. DISCUSSION

Bautech seeks dismissal of this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. In the alternative, Bautech argues this case should be transferred to the Southern District of Florida, which is where Bautech's business offices and manufacturing plant are located. The Court will discuss personal jurisdiction before turning to whether dismissal or transfer is appropriate.

#### A. **Personal Jurisdiction**

Bautech asserts that it does not have sufficient minimum contacts with Indiana to establish personal jurisdiction because it does not conduct any business in Indiana, does not advertise or sell to persons in Indiana, and the UCC lien was filed in Florida (Filing No. 12 at 5). In addition, all property subject to the lien as collateral was located in and remains in Florida, the Note specifically states that Florida law governs, the Note's own terms state it is to be treated as if it were between two Florida residents, and the entire purpose of the Note—to facilitate capital equipment purchases and general corporate purposes for Bautech's business—was for business that was conducted in Florida. *Id.* at 5–6.

Brunnemer argues in response that the Note lists him as an Indiana resident, that he funded the loan from Indiana, and that Bautech sent repayment money to him in Indiana (Filing No. 13 at 2). He also argues that he negotiated and executed the Note from Indiana because he cannot travel on account of his disability. Finally, while admitting that mere payments to and having a contract with a forum state is not enough to establish jurisdiction, Brunnemer nonetheless argues that minimum contacts existed because Bautech mailed payments to his Indiana residence, wired money into his Indiana bank account, and Bautech never asked him to travel to Florida. Brunnemer adds that he never anticipated that he would be forced to litigate in Florida because due to his poor health, he is unable to travel.

The Court is sympathetic as to Brunnemer's physical challenges, but federal law is clear that the actions of the defendant, not the plaintiff, dictate whether this Court has jurisdiction. "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. To determine whether this Court has jurisdiction over Bautech, the Court considers whether Indiana's long-arm statute and the federal constitution permit the exercise of jurisdiction. *Id.*; *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). "Indiana Trial Rule 4.4(A)—Indiana's 'long-arm' rule for exercising personal jurisdiction over out-of-state defendants—permits exercising personal jurisdiction in any manner that is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Oswald v. Shehadeh*, 108 N.E.3d 911, 916–17 (Ind. Ct. App. 2018). Whether personal jurisdiction is proper under Indiana's long-arm statute and the Due Process Clause therefore "collapses into a single search for what the outer limits of due process permit." *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 827 (Ind. Ct. App. 1999).

Personal jurisdiction over an out-of-state defendant permitted by the Due Process Clause arises in two forms: general personal jurisdiction, which allows a court "to hear any and all claims against [out-of-state defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)), and specific jurisdiction which is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* Only specific jurisdiction is contested in this case, as neither party asserts that the Court has general jurisdiction over Bautech.

To establish specific personal jurisdiction in the forum state, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe*, 326 U.S. at 316). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 206 N.E.3d 462, 467 (Ind. Ct. App. 2023), *trans. denied*, 212 N.E.3d 1230 (Ind. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The United States Supreme Court set the standard for lower courts' analyses of the minimum contacts test in *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472. In that case, the Supreme Court analyzed whether a Florida court could exercise specific personal jurisdiction over a Michigan-based defendant for claims alleging failure to make payments to a Florida corporation, Burger King, under a franchise agreement. *Id.* at 464. The Supreme Court held that "critical to due process analysis" is "foreseeability," specifically whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

8

*Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Supreme Court clarified that an "individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum," *id.* at 478, but noted that a lack of physical contacts with a state cannot defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Id.* at 476. The Supreme Court also instructed lower courts to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479. Contacts that are "'random,' 'fortuitous,' or 'attenuated'" are insufficient to establish a forum state's jurisdiction over a defendant. *Id.* at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

In *Burger King*, the Supreme Court concluded that the Florida court had specific personal jurisdiction over the Michigan defendant, emphasizing the following factors: (1) the defendant "'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization," *id.* at 479–80 (quoting *Travelers Health Ass'n v. Commonwealth of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)); (2) the twenty-year contract "envisioned continuing and wide-reaching contacts with Burger King in Florida," *id.* at 480; and (3) "the parties' actual course of dealing repeatedly confirmed that decisionmaking authority was vested in [Burger King's] Miami headquarters." *Id*. The Supreme Court also noted that throughout various disputes that arose in their course of dealing, the parties "carried on a continuous course of direct communications by mail and by telephone," and that "[t]he contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami

9

headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami." *Id.* at 480–81.

Recently, in *Spokane Kart Racing Association v. American Kart Track Promoters Association, Inc.*, the Indiana Court of Appeals found that an Indiana court could exercise specific personal jurisdiction over out-of-state defendants. 206 N.E.3d at 464 (Ind. Ct. App. 2023). In *Spokane Kart Racing*, several Oregon- and Washington-based defendants contracted with the plaintiff, the American Kart Track Promoters Association, Inc. ("AKTPA"), an Indiana corporation, for membership in AKTPA and for insurance issued by AKTPA. *Id.* The court noted that the case "involve[d] more than just a contract for insurance," and held that personal jurisdiction was appropriate despite a lack of the defendants' physical presence in Indiana because the defendants sought out a business relationship with AKTPA, included automatic renewal in their contract terms, receipt of various forms and items from AKTPA in Indiana, sent payments to AKTPA in Indiana, corresponded with AKTPA nearly one hundred times, and returned reports to Indiana for AKTPA. *Id.* at 469.

On the other hand, Indiana state and federal courts have found personal jurisdiction lacking where the contacts with Indiana are less extensive than those in *Burger King* or *Spokane Kart Racing*. In *Hotmix & Bituminous Equipment Inc. v. Hardrock Equipment Corp.*, the Indiana Court of Appeals held that the contacts between Indiana and defendant Hardrock, a New York corporation, were insufficient to support personal jurisdiction. 719 N.E.2d at 830 (Ind. Ct. App. 1999). The court reasoned that the out-of-state corporation was "not generally engaged in business in Indiana, its agents did not come to Indiana to offer or negotiate an agreement, and its contacts with Indiana consisted solely of interstate mailings and telephone calls." *Id.* at 828. The court found it could not extend personal jurisdiction to the defendant "[e]ven assuming that Hardrock was the

party that initiated the contact." *Id.* The court further noted that personal jurisdiction was weakened by the fact that plaintiff performed services in Ohio rather than Indiana, as the dispute arose over the sale of equipment located in Ohio. *Id.* at 827–28.

In *Prolific, LLC v. Freedom Central Holdings, Inc.*, the Court analyzed personal jurisdiction where the South Carolina defendant had no offices, employees, bank accounts, or real estate in Indiana, the defendant had never sold any goods or services in Indiana, and no employees entered Indiana for business purposes. No. 21-cv-2725, 2022 U.S. Dist. LEXIS 125494, at *1 (S.D. Ind. July 14, 2022). In that case, the South Carolina-based defendant had contacted the South Carolina subsidiary of an Indiana company. *Id.* at 2. The subsidiary then referred the defendant to its parent with which the defendant soon after entered into an agreement. *Id.* The Court found that personal jurisdiction was lacking because "all the important aspects of the parties' relationship occurred in South Carolina, [and] text messages and phone calls to Indiana cannot overcome their significance to establish purposeful availment." *Id.*

Here, the circumstances do not confer upon the Court jurisdiction over a defendant who lacks sufficient minimum contacts with the forum state. Bautech has virtually no relevant contacts to Indiana: Bautech's business is both located and operated in Florida; Bautech does not sell or advertise to persons in Indiana; the purpose of the Note was to provide Bautech with capital to purchase equipment to run its business, which is located in Florida; the UCC lien was filed in Florida; the collateral secured by the UCC lien was located in and remains in Florida; and the Note states that Florida law governs. This case is similar to *Hotmix* in that even if the Court accepts Brunnemer's assertion that Bautech reached out to Indiana to negotiate the Note, Bautech's agents never came to Indiana, Bautech's business is conducted almost exclusively in Florida and never in

11

Indiana, Bautech does not advertise or sell to persons in Indiana, and Bautech's only link to Indiana is the Note.

While Brunnemer is correct that a governing law clause is not the same as a forum selection clause, this does not change the fact that neither Bautech nor the Note contemplated suit in Indiana. Again, the Note states that Florida law governs.

Brunnemer unpersuasively proffers all the contacts *he* has with Indiana and how *he* did not expect to travel to Florida due to his poor health. But, as evidenced by the case law cited by the Court above, personal jurisdiction over a defendant focuses on the *defendant's* actions and the *defendant's* likelihood of being hauled into court in a foreign jurisdiction, not the plaintiff's. Indeed, the entire purpose of analyzing personal jurisdiction is to determine whether the Court may hale an out-of-state defendant into Court to litigate some matter.

The only contact Bautech has with Indiana is the payments owed to Brunnemer in accordance with the Note. This alone is not enough. *See North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023) ("'[A]n individual's contract with an out-of-state party *alone*,' the Supreme Court has stressed, cannot 'automatically establish sufficient minimum contacts in the other party's home forum.'" (emphasis and alteration in original) (quoting *Burger King*, 471 U.S. at 478)). Accordingly, Bautech lacks sufficient minimum contacts with Indiana as the forum state and the Court concludes that it does not have personal jurisdiction over Bautech. As such, the Court need not address the venue issue. *See Comitz v. Rife*, 597 F.Supp.3d 1235, 1243 (N.D. Ill. 2022) (citing 28 U.S.C. § 1391(b)(3); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019)).

**B.** **Transfer**

Bautech asks the Court to dismiss the complaint for lack of personal jurisdiction, or, in the alternative, to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1406

([Filing No. 12 at 10](Filing No. 12 at 10)). Having determined that the Court lacks personal jurisdiction over Bautech (and having declined to consider whether venue is proper), the Court instead evaluates whether transfer is appropriate under 28 U.S.C. § 1631.

"[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *Ubiquity, Inc.*, 72 F.4th at 228. Section 1631 provides the following in relevant part:

> Whenever a civil action is filed . . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed.

28 U.S.C. § 1631. A compelling reason for transfer exists where a claim would be time-barred if the plaintiff were forced to file his claim anew in the correct venue. *See Ubiquity, Inc.*, 72 F.4th at 228 (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Conversely, where the claims are not barred and the plaintiff may refile his case, transfer is not required by the interest of justice. *See id.* (quoting *Danzinger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020)).

It is undisputed that any transfer would be to the Southern District of Florida. Here, the parties fail to address whether the Court should transfer or dismiss the case in the event the Court determines that it lacks personal jurisdiction. Bautech's alternate requests suggest that it has no opposition to either a transfer or dismissal.

In determining whether to transfer or dismiss, the Court first considers that Brunnemer's claims would not be time barred under Florida law—the state law which expressly governs the Note. Florida's statute of limitations for breach of contract is five years. Fla. Stat. § 95.11(2)(b). Moreover, a cause of action for breach of contract accrues at the time of the alleged breach. *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818, 820 (Fla. 1996); *Med. Jet, S.A. v. Signature Flight*

13

*Support – Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. Dist. Ct. App. 2006). Brunnemer's complaint alleges that Bautech first breached the contract on March 1, 2024 (Filing No. 1 at 4). Accordingly, Florida's statute of limitations will not bar Brunnemer's claims until at least March 1, 2029, nearly three years from the date of this Order. However, because of Brunnemer's stated disability and the likelihood of his wanting a swift resolution, the Court finds that considering fairness, transfer pursuant to 28 U.S.C. § 1631 would best serve the interest of justice.[1] The Court also recognizes that Brunnemer may prefer a dismissal so that he has ample time to secure local counsel (if necessary) and so he can determine his timeline to refile the case himself in Florida. Accordingly, the transfer is **stayed** until March 19, 2026. In the event Brunnemer believes dismissal best serves the interest of justice, he shall make it known before the deadline. If nothing is filed by March 19, 2026, the Clerk will transfer this case to the Southern District of Florida.

### IV.   CONCLUSION

For the reasons discussed in this Order, the Court concludes that it lacks personal jurisdiction over Defendant Bautech USA, Inc., and Defendant's Motion to Dismiss for Lack of Jurisdiction and Improper Venue and in the Alternative to Transfer Venue (Filing No. 12) is **GRANTED**. The Court concludes that the alternative request to **TRANSFER** to the Southern District of Florida would best serve the interests of justice. However, because the Plaintiff Brent Brunnemer has not included his position on whether he believes a transfer or dismissal would best serve the interests of justice, the transfer is **STAYED** until **March 19, 2026**. If nothing is filed by the **March 19, 2026** deadline, the **Clerk is directed to transfer** this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1631, and the Court will issue final judgment accordingly.

---

[1] 28 U.S.C. § 1406 also gives the Court authority to transfer if doing so is "in the interest of justice." *See Ubiquity, Inc.*, 72 F.4th at 229.

**SO ORDERED**.

Date: March 4, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Faith Elizabeth Alvarez
Alvarez Legal, LLC
faith@faithalvarez.com

Robert Scott Daniels
DEFUR VORAN LLP (Fishers)
rdaniels@defur.com

Michael Dean Heavilon
DeFur Voran
mheavilon@defur.com